IN THE MATTER OF THE PETITION OF THE HARLEM PRESBY-TERIAN CHURCH, RESPONDENT, *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK, TO VACATE AN ASSESSMENT, APPELLANT.

IN THE MATTER OF THE PETITION OF THE SECOND AVENUE METHODIST EPISCOPAL CHURCH, RESPONDENT, *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK, APPELLANT.

IN THE MATTER OF THE PETITION OF THE RECTOR, CHURCH WARDENS AND VESTRYMEN OF THE CHURCH OF THE HOLY SEPULCHRE, RESPONDENTS, *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK, APPELLANT.

*Property of religious corporations — not exempt from assessment for local improvements — § 7, chap. 326 of 1840 — not applicable to property exempt from taxation — chap. 313 of 1874, and chap. 580 of 1872 — failure to publish resolution authorizing the improvement.*

The exemption from taxation accorded to the property of religious corporations, by 1 Revised Statutes (5th ed.), page 906, section 5, does not include assessments made for local improvements required for the public convenience, and which directly tend to enhance the value of the property in the vicinity of which they are made.

The provisions of section 7, of chapter 326 of the Laws of 1840, requiring that assessments for improvements should in no case exceed half the value of the property, as valued by the assessors of the ward in which it is situated, relate to and include only the property which is taxable for the ordinary purposes of government; and property exempt from taxation, and therefore not valued on the tax rolls, should nevertheless be assessed for the benefits resulting from local improvements.

Under the provisions of section 7, of chapter 580 of 1872, and chapter 313 of 1874, an assessment cannot be set aside for a failure to publish the resolution authorizing the improvement, except in case of fraud or of a repavement.

The power of the legislature to cure defective assessments discussed.

APPEAL from orders vacating assessments made upon the petitioners' property for the expenses of paving certain streets in the city of New York.

*E. Delafield Smith* and *William Barnes*, for the appellant.

*Elliot Sandford,* for the Rector, etc., of the Church of the Holy Sepulchre.

*Irving Ward,* for the Second Avenue Methodist Episcopal Church and the Harlem Presbyterian Church.

DANIELS, J. :

At the time when the improvement and the assessment were made, the petitioner was and still is a religious corporation existing under the laws of this State, and owned and used the assessed property for the sole purpose of public worship. Under the general law of the State, it was therefore expressly exempted from taxation. (1 R. S. [5th ed.], 906, § 5, sub. 3.) But that exemption extended no farther than to relieve it from the common obligation of property owners for the payment of taxes, properly so called, and they included only that yearly recompense which is paid for the support of the municipal, county, and State governments, for the security and protection afforded in the enactment and execution of the laws.

The exemption did not include assessments made for local improvements required for the public convenience, and which directly tend to enhance the value of the property in the vicinity of which they may be made. For the expenses of improvements of that nature, the law expressly required an estimate and assessment to be made among all the owners or occupants of *all* the houses and lots of ground intended to be, or by the commissioners deemed, benefited thereby. (Davies' Laws of the City of New York, 419, § 16, 596, § 1.) These provisions are general, and without exception, and include real estate owned by religious corporations, as well as that owned by individuals. (*People* v. *Mayor of Syracuse,* 9 S. C. [2 Hun], 433.) They render all the property liable for the expenses, which may be benefited by the improvement for which the assessment shall be made.

The petitioner's property was benefited by the improvement for which the assessment was designed to pay. But it is claimed, in favor of its exoneration from payment, that the assessment was irregularly imposed, and that was the view which was taken of it by the court at the Special Term. This irregularity consisted alone

in the fact, that the petitioner's property had not been valued in conformity with what it was contemplated should be done in order to determine the amount beyond which the assessment should not extend. (Section 7, of chap. 326, of the Laws of 1840.) That required that the assessments for improvements, authorized by law to be assessed upon the owners or occupants of houses and lots, improved and unimproved lands, should in no case exceed half the value, as valued by the assessors of the ward in which it might be situated. (Laws of 1840, 273, § 7.) The petitioner's property was not valued by the deputy tax commissioners, nor by the tax commissioners themselves, who succeeded to the powers, and were required to discharge the duties, of the assessors of the ward. (Laws of 1857, vol. 2, 498, § 5 ; Laws of 1859, vol. 2, 679, § 2.) In making the roll as they were required to make it, they made no valuation whatever of it, but simply noted it as exempt ; and that was all which lawfully could have been done with it. For it was only taxable property which could, either by the general laws of the State, or those relating to the city of New York, be included in the assessment roll, or valued. (1 R. S. [5th ed.], 909, §§ 7–10 ; vol. 2, Laws of 1859, 680, § 7, 682, § 12.) Property of the description of that owned by the petitioner, could be neither included in the roll, nor valued by the officers making it, and it consequently could not be within section 7 of the act of 1840. That section made no change in the property which should lawfully be assessed for the expenses of local improvements. It exempted nothing from such assessments, which, by previous legislation, had been rendered liable to them, but simply prohibited the extension of the assessment beyond half the valuation fixed by the assessors. And it could only have the effect of controlling that action in cases where a valuation was by law required to be made. By necessary implication, therefore, it related to and included only the property which was taxable for the ordinary purposes of government, and for that reason could be inserted in the assessment roll. That was as far as the act of 1840, by its terms or reasonable construction, extended upon this subject. The prohibition made had no relation to exempt property, but must have been designed to exclude that, because it could not lawfully be valued by the tax commissioners ; and the act containing it, in no respect undertook to restrict the

provisions, previously enacted, rendering all property benefited liable to contribute to the expenses of local improvements. For these reasons, the omission of the valuation required to be given to property not exempt from taxation for ordinary purposes, did not render the assessment of the petitioner's property irregular. As it could not be valued, as the section contained in the act of 1840 contemplated, the property it applied to should be, and it had been rendered liable to assessment for the benefits secured to it by means of local improvements; it was the duty of the commissioners to assess it notwithstanding the omission to value it. In making such assessment, it was undoubtedly their duty to govern their action by the equity of the provision of the act of 1840, by not extending it beyond half the valuation given to taxable property, for the purpose of taxation. And that seems to have been observed in the assessment of the petitioner's property, for it was not claimed that it had been made on any greater valuation than half that placed upon other taxable real estate in its immediate vicinity for the purpose of taxation. The board exercised its discretion equitably and in strict conformity to the powers which had been given to it. (Laws of 1859, 682, § 15; *Matter of Church street*, 49 Barb., 455; *Matter of Anderson*, 57 id., 411; *Matter of Palmer*, 31 How., 42.)

The resolution providing for the improvement was finally adopted on the 16th day of March, 1869, and for that reason it should legally have been published according to the provisions contained in the act of 1857. (Vol. 1, Laws of 1857, 886, § 37.) But as this was not a case of fraud, and the improvement was not a repavement, the omission to make the publication was insufficient to justify an order vacating or setting aside the assessment. For, at the time it was confirmed and the proceedings to set it aside were instituted, the act 1874 had taken effect, forbidding that to be done on account of such an omission. It was at first enacted that assessments should be vacated for fraud or substantial error. (Laws of 1874, chap. 312.) But this provision was so far limited and restrained by the next succeeding act, as to prevent the omission to publish, as well as other enumerated defects, from being held to be substantial errors. These acts were passed upon the same day, and each related to the same subject and should therefore be considered together. And when so considered, they clearly support

the conclusion that it was designed to take away the remedy previously existing, so far as it was dependent upon the defects complained of in this case. That was within the power and control of the legislature, which has in effect provided that neither the omission to publish, previously required, or to value the petitioner's property, should constitute a substantial error in these proceedings. The last act, in terms, declared that no assessment previously made, or afterward to be made, for any local improvements in the city of New York, for work then completed, or then being made, or afterward to be performed, should be vacated or set aside for any omission to advertise, or irregularity in advertising, any ordinance or resolution relative to or authorizing the improvement, except in cases of fraud and repavement. (Laws of 1874, 367, § 7.) This section went farther even than that, for it prohibited the vacation of the assessment on account of an omission of the nature of that relied upon in favor of the petitioner under the terms of the act of 1840. No construction is required to support this conclusion. The act provides for it in plain terms, by declaring that no assessment shall be vacated, that may be made for a local improvement previously completed, or being made, or afterward to be performed, for the omission of any officer to perform any duty imposed upon him, or any defect in the authority of any department or officer to perform any duty imposed upon him, upon whose action the assessment shall be, in any manner or to any extent, dependent, or for or by reason of any omission to comply with or carry out any detail of any law or ordinance, or for any irregularity, unless the case be one of fraud, or an assessment for repaving. It was then provided that all property benefited by any improvement already made, or afterward to be made, unless the cases were included in the preceding exceptions, should be liable to assessment for the improvement, and that the assessment should be valid and binding notwithstanding any such omission, irregularity, or defect of authority.

These provisions very clearly render it the duty of the court to sustain this assessment, and distinguish it from the case of the *First Presbyterian Church* v. *City of Fort Wayne* (36 Ind., 338), relied upon in support of the petitioner's application.

All the reasons assigned in support of this conclusion require that the same disposition should be made of the application of the

rector, church wardens, and vestrymen of the Church of the Holy Sepulchre, to vacate the assessment for paving Seventy-fourth street, from Third to Fifth avenue. The resolution providing for the improvement was finally adopted on the 25th day of October, 1872, and the assessment for its expenses was confirmed on the 21st of July, 1874. The case is in all substantial respects the same as the preceding one, except that the laws in force when the resolution was adopted, did not require its publication in all the newspapers employed by the corporation, but simply a three days publication before either board acted upon it, and a publication of the yeas and nays, with the names of the persons voting upon it, before it was sent to the last board, or to the mayor. (Laws of 1870, vol. 1, 369, § 20.) There was no proof in the case of a non-compliance with this requirement.

The application made by the Second Avenue Methodist Episcopal Church, to vacate two assessments upon its property for paving Second avenue from Eighty-sixth to One Hundred and Twenty-fifth street, and One Hundred and Nineteenth street from Third avenue to avenue A, differs from the case first considered in the circumstances that the assessments were finally confirmed on the 15th of January and the 25th of August, in the year 1873, which was before the enactment of the laws already referred to, confirmatory of similar proceedings. But those circumstances require no different disposition to be made of the case, because a law equally as effectual for the correction of the omission to publish, and the other omission complained of, as the act of 1874, was then in existence, and applied to the case. (Vol. 2, Laws of 1872, 1416, § 7.) When the assessment was made and confirmed, it was valid and binding under the provisions of this act, notwithstanding the failure to publish the resolution or value the petitioner's property, even if the case was within the act of 1840. (*Lennon* v. *Mayor, etc.*, 55 N. Y., 361.)

The laws render the petitioner's property liable for the benefits received by it from the improvements made; and it was subjected to no additional burden, nor deprived of any substantial right by the act of 1872, which was amended and continued in force by chapter 313 of the Laws of 1874. That act confirmed and ratified the proceedings taken, by providing that such irregularities as were

the foundation of the application should not invalidate them ; and that was within the power of the legislature, which could in direct terms have provided for making the assessment without any reference to the proceedings previously had for the performance of the work. (*Lennon* v. *Mayor, supra ; Matter of Van Antwerp*, 56 N. Y., 261.) From the time when the act took effect, those proceedings became valid and effectual. That was their condition when the assessments were made, and no reason exists for setting them aside.

The orders in these cases should be reversed, with ten dollars costs besides disbursements, and orders entered denying the motions, with costs.

DAVIS, P. J., and BRADY, J., concurred.

Ordered accordingly.